1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11
12   EARL JOSEPH,

             Petitioner,

13
14   v.

15   UNITED STATES OF AMERICA,

16             Respondent.

17

Case No. C-08-04607-RMW
Related Criminal Case: CR-00-20217

**ORDER DENYING MOTION UNDER
28 U.S.C. § 2255**

[Re: Docket No. 1][1]

18

19        On October 2, 2008, Earl Joseph filed a motion pursuant to 28 U.S.C. § 2255 attacking his

20   conviction and sentence.  The Government filed its opposition on the merits on November 13, 2011.

21   Since receiving the government's opposition, Joseph has sent several letters replying to the

22   government's opposition which focus on a purported exonerating declaration from co-defendant

23   Damian Bates, a rental receipt with a date allegedly inconsistent with trial testimony, and a

24   declaration from an uncalled, allegedly favorable witness, Thomas Walker.  The court has reviewed

25   the evidence and the arguments presented, and hereby denies the motion.  The court grants a

26   certificate of appealability on Joseph's claim that he is entitled to a hearing on his claim that his due

27   process rights were violated because his conviction was based on perjured testimony.

28

[1] The docket number in the related criminal case, CR-00-20217, is 187.

United States District Court
For the Northern District of California

# I.  PROCEDURAL HISTORY

Earl Joseph was indicted on four counts of armed bank robbery or aiding and abetting armed bank robbery with acquaintances Damian Bates, Marcel Swift, and Elmar Scott, in violation of 18 U.S.C. §§ 2113(a) and (d)(1) and (2) (Counts One through Four); and on four counts of use of a firearm in relation to armed bank robbery or aiding and abetting the use of such firearm, in violation of 18 U.S.C. §§ 924(c)(1) and (2) (Counts Five Through Eight).  His accomplices Scott and Bates pled guilty and testified at his trial.  On the day of trial, Scott refused to testify despite his plea bargain, stating that he feared for his and his family's safety if he testified.  Trial Transcript ("Tr.") 485-88, CR-00-20217-RMW, Dkt. Nos. 164-172.  On the last day of trial, Joseph's then-girlfriend produced alibi evidence for one of the robberies: a handwritten receipt with Joseph's signature, purportedly signed in a different location than the contemporaneous robbery.  Defense counsel Fong would not make representations as to the receipt's authenticity. Tr. 1267-71.  The court refused to admit the receipt because Joseph had not provided pre-trial notice of an alibi defense.  Tr. 1271.

On November 27, 2002, a jury found Joseph guilty of Counts One and Five (Alliance armed robbery and use of firearm), Counts Two and Six (FSC armed robbery and use of a firearm), the lesser included offense of robbery under Count Three (EBTEL robbery), and the lesser included offense of robbery under Count Four (Cathay robbery).  He was found not guilty of Counts 7 and 8 (use of a firearm in connection with the EBTEL and Cathay robberies).

After numerous continuances of the sentencing date and a change in counsel, on June 2, 2005, more than two and a half years after his trial concluded, Joseph filed a motion for a new trial based on (1) the purported recantation of trial testimony by Elmar Scott, one of the government's witnesses; (2) the receipt not admitted at trial purporting to indicate that Joseph was at a different location than the scene of the FSC robbery on February 7, 1996; and (3) on various allegations that his trial counsel was ineffective.  On July 11, 2005, Joseph filed an essentially identical motion for a new trial, this time including a purported sworn declaration from Scott.  The government opposed the motions.  On September 9, 2005, the court issued a written order denying Joseph's motions for a new trial, but without prejudice as to the inadequacy of counsel claims, suggesting that those claims should be brought under 28 U.S.C. § 2255.

On October 3, 2005, the court sentenced Joseph to 384 months in prison.  On October 11, 2005 and November 3, 2005, Joseph filed notices of appeal.  Joseph then filed a brief raising three issues on appeal: (1) based on the evidence, the jury could not have found Joseph guilty of Count Two or Count Six of the indictment; (2) that this court erred in admitting Joseph's statement to the owner of the car he had allegedly used for three of the bank robberies that "[t]he cops are going to be calling you.  Don't say my name. Don't say anybody's name"; and (3) that this court erred in denying Joseph's motion for a new trial based on the supposed recantation of Scott in 2004.

On December 4, 2006, the court of appeals affirmed the judgment of conviction.  Joseph filed petitions for panel rehearing and rehearing en banc, which were denied on August 22, 2007.

On October 2, 2008, Joseph filed the instant § 2255 petition.  On July 22, 2010, the government filed a motion to dismiss the petition as untimely, which was later withdrawn.

On November 13, 2011, the government filed its opposition on the merits to Joseph's § 2255 motion.  On June 17, 2011, nearly three years after filing the § 2255 petition, Joseph filed a sworn declaration allegedly from government witness Bates in which Bates recants his trial testimony against Joseph at trial.  Resp. Ex. 1 ("Bates Declaration #1"), Dkt. No. 13-1.  The government has responded by providing a separate sworn statement of witness Bates, procured by the FBI.  In this statement, Bates denies writing or signing the declaration submitted by Joseph and reaffirms that he told the truth during Joseph's trial.  Resp. Ex. 2 ("Bates Declaration #2"), Dkt. No. 13-2.

## II.  GROUNDS ON WHICH MOVANT SEEKS RELIEF

Joseph bases his § 2255 motion on numerous grounds, specifically:

(1) the jury improperly "rushed" the verdict;

(2) denial of due process, equal protection, and prohibition against cruel and unusual sentences based on the disparity of defendant's sentence and those sentences received by co-defendants;

(3) failure to give credit for pre-trial incarceration;

(4) the United States violated *Brady* by not turning over exculpatory evidence, namely, Scott's polygraph tests;

United States District Court
For the Northern District of California

(5) the trial testimony of Scott and Bates was conflicting and, therefore, defendant's involvement in the FSC robbery was not proved beyond a reasonable doubt;

(6) the Court erred in allowing evidence regarding an uncharged robbery on May 10, 1996 to come into evidence;

(7) his conviction was based upon perjured testimony;

(8) and ineffective assistance of counsel based upon counsel's:

(a) failure to call witnesses who would be favorable to Joseph;

(b) failure to investigate or present exculpatory or impeaching evidence;

(c) failure to impeach government witness Scott;

(d) giving the government permission to lead Scott;

(e) failure to object to government witness Scott being in the courtroom prior to his testimony;

(f) failure to adequately consult with defendant and learn the evidentiary bases for defenses; and

(g) failure to explain the maximum possible sentences for multiple 18 U.S.C. § 924(c) convictions.

### III. ANALYSIS

A court may grant a petition for a writ of habeas corpus on behalf of a prisoner in custody if his "sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Most of Joseph's claims are non-cognizable claims or are procedurally barred because they were not raised on direct appeal. This court can, however, consider for the first time his claims of perjured witness testimony and ineffective assistance of counsel because they are based on new evidence.

### A.  Claims That are Non-Cognizable or Procedurally Barred

This court may not grant a petition with respect to any claim unless the claim is cognizable and not procedurally barred. Many of Joseph's claims are not cognizable under the § 2255 standard. Additionally, some of his claims were not raised on his direct appeal of his conviction to the Ninth Circuit. With the exceptions of the claim of perjured witness testimony—factual information which

United States District Court
For the Northern District of California

was not available at the time of appeal—and the claim of ineffective assistance of counsel, all other claims are procedurally barred.

### 1. Non-cognizable claims

A valid § 2255 claim must allege that the sentence is (1) in violation of the Constitution or laws of the United States, (2) imposed by a court without jurisdiction, (3) in excess of the maximum authorized by law, or (4) otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Collateral attacks are not cognizable unless they constitute a "fundamental defect" which inherently results in a complete miscarriage of justice or an omission inconsistent with "rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 471 (1962); *see also Davis v. United States*, 417 U.S. 333, 346 (1974).

Several of Joseph's claims are not cognizable under § 2255 in addition to being procedurally barred. Here, Joseph alleges that he was improperly convicted due to jury misconduct. He asserts that the jury was "restless" and therefore rushed the verdict without considering the full weight of the evidence. This is not a constitutional or jurisdictional claim, nor is it the kind of collateral attack constituting a "fundamental defect" resulting in a complete miscarriage of justice. *See Hill*, 386 U.S. at 471. Thus, this is not a claim that can be asserted under § 2255.

Next, Joseph alleges that his sentence is flawed because of the significant difference between his sentence and that of his equally culpable accomplices. While the probation report did conclude that Scott, Bates, and Joseph were all equally culpable for the robberies, Scott and Bates received significantly shorter sentences. The disparity in sentencing is clear, but this is not a cognizable claim under § 2255. Joseph had two 18 U.S.C. § 924(c) convictions, requiring a mandatory minimum sentence of 384 months. Scott and Bates were charged and pled guilty to lesser offenses. Mere prosecutorial discretion, without a showing of an improper arbitrary or capricious motive, is not a constitutional violation. *Williams v. Illinois*, 399 U.S. 235, 243 ("The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences."); *Odle v. Calderon*, 884 F. Supp. 1404, 1426-27 (N.D. Cal. 1995). The trial court expressed concern about the great disparity between Joseph's sentence and the sentence of the other bank robbers, and gave Joseph the minimum

United States District Court
For the Northern District of California

sentence required by law.  *See* 18 U.S.C. § 924(c).  This is not a violation of Joseph's rights, and not a cognizable claim under § 2255.

Finally, Joseph asserts that he was not given credit for the 24 months he served prior to sentencing.  The Bureau of Prisons is responsible for giving time served.  Joseph must exhaust the administrative remedies the Bureau of Prisons provides before seeking relief from this court for an improper calculation by the Bureau of Prisons.

### 2.  Procedurally barred claims

When a § 2255 petitioner could have raised a claim at trial or on direct appeal and did not, relief is barred by the procedural default doctrine.  *See United States v. Frady*, 456 U.S. 152, 168 (1982).  Under the procedural default doctrine, a claim that "can be fully and completely addressed on direct review based on the record created" in the trial court but was not raised on direct appeal is deemed waived, unless the petitioner can demonstrate cause for failure to raise the claim and actual prejudice resulting from this failure.  *See, e.g.*, *Bousley v. United States*, 523 U.S. 614, 621-22 (1998).  This does not apply to claims that could not have been addressed given the full trial record. *Id.*

Joseph must show that such cause and prejudice worked to his actual and substantial disadvantage in order to excuse the failure to raise the claim on direct appeal.  *See United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007).  And, he has not shown cause and prejudice.  With the exception of the claims of perjured witness testimony and ineffective assistance of counsel, Joseph's remaining claims are procedurally barred for his failure to assert them on direct appeal. *See Bousley*, 523 U.S. at 621-22.  In addition, these claims are without merit.

First, Joseph asserts prosecutorial misconduct for failing to reveal exculpatory evidence to the defense.  Joseph claims that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1979) by failing to produce Scott's polygraph tests.  The record shows, however, that the United States did provide Joseph with information about the polygraph test.  Tr. 745-54.  At trial, Scott was questioned about the polygraph taken by the prosecutor's office, and the jury heard that Scott failed the polygraph and lied to the government.  Tr. 762-63.  The prosecution disclosed the polygraph test that they took and this information was used at trial; there was no prosecutorial misconduct.

United States District Court
For the Northern District of California

Next, Joseph alleges that the prosecution failed to prove its case beyond a reasonable doubt because witnesses' testimony conflicted. Pet.'s Mot. 13. The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 268 (1970). The proper inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Given this standard, a fact-finder is free to favor one conflicting witness's testimony over another. Viewing the conflicting witness testimony in the light most favorable to the prosecution, a rational trier of fact could have found Joseph guilty beyond a reasonable doubt. Not only is this claim procedurally barred, but it is without merit.

Finally, Joseph argues that the court ruled improperly on an evidentiary question involving the admission of evidence of a crime for which he was not charged. The court allowed this evidence in with a limiting instruction that any information regarding the uncharged robbery should only be considered for its relevance to Joseph's association, if any, with a blue Acura used in those robberies. Tr. 488-89. The court acted well within its discretion when admitting this evidence with a limiting instruction. *See United States v. Chea*, 231 F.3d 531, 534-35 (9th Cir. 2000) (explaining that Fed. R. Evid. 404(b) is broadly inclusive and approving the admission of evidence of uncharged robberies to show intent, plan, knowledge or association with a general scheme when a limiting instruction is used). Once again, not only is this claim procedurally barred for Joseph's failure to raise the issue on direct review, but the claim on its own lacks merit.

**B. Allegedly Perjured Witness Testimony**

Knowing use of perjured testimony is fundamentally unfair and a cognizable ground for relief. *United States v. Agurs*, 427 U.S. 97, 103 (1976). Joseph contends that his sentence was in violation of the laws of the United States because his alleged accomplices, Damian Bates and Elmar Scott, who testified for the government that Joseph was involved in the robberies, lied under oath and have purportedly recanted their testimony. This is a new factual basis unavailable at the time of direct appeal and thus appropriately before the court. *See Bousley*, 523 U.S. at 622.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Joseph offered the purported declaration of Elmar Scott dated July 11, 2005 in support of his new trial motion.  In that declaration, Scott stated that, contrary to his trial testimony, he had no knowledge that Joseph was involved in the Alliance or FSC robberies.  Joseph's new trial motion was denied and the court noted why recantations are looked upon with the utmost suspicion.  *See United States v. DiPaolo*, 835 F.2d 46, 49 (2d Cir. 1987).

> It would encourage perjury to allow a new trial once co-defendants have determined that testifying is no longer harmful to themselves.  They may say whatever they think might help their co-defendant, even to the point of pinning all the guilt on themselves, knowing they are safe from retrial.  Such testimony would be untrustworthy and should not be encouraged.

*United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992).

The court of appeal in affirming the denial of a new trial based upon Scott's alleged recantation observed,

> Joseph's challenge fails because he cannot demonstrate a new trial would probably result in an acquittal.  His argument that Scott's recantation breaks apart the consistent story that Bates, Scott, and Marcel Swift, another accomplice, provided at trial ignores the reality that this story was also consistent with the accounts of various other eyewitnesses, Day's testimony, a motel receipt, a rental car receipt, car registration records, the physical evidence in Day's Acura, and other evidence the Government presented.  It also ignores that the jury had already heard impeaching evidence regarding Scott, including his admission that he failed a polygraph because he initially lied to the government about the Alliance and FSC robberies, that undermined whatever credibility he had at trial.

*United States v. Joseph*, 209 Fed. App'x 695, 698-99 (9th Cir. 2006) (internal citations omitted).

Joseph now offers a purported declaration of Damian Bates dated May 11, 2011.  The declaration is type written and spells Bates's first name "Damion."  The signature on the statement is not clear as to how "Damian" is spelled, but appears to reflect the misspelling "Damion."  The signature bears no resemblance to the signature of Bates on a declaration signed on October 27, 2011, in which Bates denies that he signed the purported May 11, 2011 declaration.  Bates declares that when he first got out of prison in 2007 he received some papers from Joseph's family that he did not sign.  Bates also declares that he has not had recent contact with Joseph's family and that he never told Joseph or Joseph's wife Salema that he lied in his trial testimony.  Joseph has submitted a declaration signed by Richard Mazer who, according to Joseph, is his former attorney.  The

declaration verifies that a memorandum dated January 23, 2008, is truthful in indicating that Attorney Mazer met with Bates at the Federal Building on that date and was driven there by Joseph's wife.  Mazer advised Bates that he, Mazer, represented Joseph and that he would not take a declaration of Bates because "our interests may differ from his [Bates]" and that "[n]o discussion of the details of Mr. Bates's recantation occurred today."  Mazer decl. attached to Joseph ltr. filed June 21, 2012, CR-00-20217-RMW, Dkt. No. 207.

The court finds the evidence insufficient to raise a credible claim that Bates has recanted his trial testimony.  The purported signature on the May 11, 2011 declaration does not appear to be Bates's signature.  The content of the declaration suggests it was written by Joseph or someone acting on behalf of Joseph.  It seems unlikely that Bates would have the knowledge or motivation to put together the exonerating information that is contained in the declaration some twelve years after the robberies and over nine years after the jury returned its verdict.  Apparently, Bates did meet with Joseph's attorney in January 2008 possibly concerning recanting his testimony.  However, there is no evidence that Bates suggested he would recant.  It seems plausible that Joseph's family had prepared papers, hoping that they could get Bates to agree to recant, but there is no persuasive evidence that Bates ever agreed to do so or that he, in fact, lied in his testimony.

### C.  Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel may be brought in a collateral proceeding under § 2255 "whether or not the petitioner could have raised the claim on direct appeal."  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  The benchmark for determining a claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  A claim of ineffectiveness must meet the two-part standard set forth in *Strickland*: (1) the petitioner must show that counsel's performance was deficient, and (2) the petitioner must show that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  Moreover, "[m]erely conclusory statements in a § 2255 motion are not enough to require a hearing."  *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *see also United States v. McMullen*, 98 F.3d

United States District Court
For the Northern District of California

1155, 1159 (9th Cir. 1996) ("There would be no point in raising the issue, and hence no ineffective

assistance of counsel, unless there were some proof to offer in his favor.").

To demonstrate deficient performance, a defendant must show that "counsel made errors so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." *Strickland*, 466 U.S. at 687.  The Supreme Court has "declined to articulate specific

guidelines for appropriate attorney conduct." *Wiggins v. Smith*, 539 U.S. 510, 521.  Rather, "[t]he

proper measure of attorney performance remains simply reasonableness under prevailing

professional norms." *Strickland*, 466 U.S. at 687-88.  In reviewing ineffectiveness claims, "judicial

scrutiny of counsel's performance must be highly deferential," and the court must try to eliminate

the "distorting effects of hindsight." *Id.*  A court must pay heed to strategic choices made after a

thorough investigation of facts and law, and not second-guess those decisions which are supported

by reasonable professional judgments. *Id.* at 689-91.  Courts must presume that when counsel

focuses on some issues to the exclusion of others this is for "tactical reasons rather than sheer

neglect." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Every advocate's discretion comes with a

"calculated risk" of omission, and a court should not judge competence with the benefit of

hindsight.  *Id.* at 5-6.

Once it has been determined that counsel's performance was deficient, Joseph must show

that the deficient performance was so serious as to deprive him of a fair trial whose result was

reliable.  *See Strickland*, 466 U.S. at 687.  The appropriate test for prejudice requires a reasonable

probability that, "but for the counsel's unprofessional errors, the result of the proceeding would have

been different." *Id.* at 694.  A reasonable probability is one "sufficient to undermine confidence in

the outcome." *Id.*; *Wiggins,* 539 U.S. at 534.  "In making this determination, a court hearing an

ineffectiveness claim must consider the totality of the evidence before the judge or jury."

*Strickland*, 466 U.S. at 695.

The court now examines each of Joseph's claims of ineffective assistance of counsel.

### 1.  Failure to call witnesses who would be favorable for Joseph

Joseph first claims that counsel failed to call favorable witnesses.  With the exception of one

potential witness, Thomas Walker, Joseph provides no affidavits to support his claims that these

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  witnesses were favorable.  *See, e.g.*, *Dows v. Wood*, 211 F.3d 480, 486-87 (9th Cir. 2000) (denying

2  ineffective assistance of counsel claim based on alleged failure to call witnesses when no affidavits

3  were submitted to support petitioner's assertion as to what testimony would have been provided).

4  Moreover, many of Joseph's claims are not factually supported, as defense counsel Fong did in fact

5  call, or at least cross-examine, many of these witnesses.

6      Joseph complains that that his counsel did not call Thomas Walker as a witness to rebut

7  testimony offered by the government that he was present when defendant purchased guns from

8  Antonio Servidio, a gun dealer.  However, defense counsel cross-examined Servidio at length about

9  the purchase of the weapons.  Tr. 543-50, 572-75.  In addition, Bates, Scott, and various bank

10  employees corroborated the links between the guns, Joseph, and the various robberies.  Moreover,

11  the only evidence Joseph has provided regarding potential testimony from Walker is an unsworn

12  handwritten "affidavit" purportedly written by Walker after the government had filed its opposition.

13  This is insufficient to make a prima facie showing that Walker would have testified under oath

14  differently than Servidio.  *See, e.g., Dows*, 211 F.3d at 486-87.

15  ## 2.  Failure to investigate and introduce exculpating information

16      Joseph accuses his trial counsel of not investigating or presenting exculpatory or impeaching

17  evidence.  First, Joseph complains that his counsel did not introduce evidence of his previous

18  legitimate employment.  Such character evidence has no relevance, and if allowed, would

19  potentially have opened the door for the government to offer harmful rebuttal evidence.  *See* Fed. R.

20  Evid. 404 & 405.  Because the decision not to introduce this testimony was likely a tactical decision,

21  not sheer neglect, and the court must be deferential to counsel's judgments, the court cannot find,

22  without much more substantial evidence, that counsel was ineffective.  *See Yarborough*, 540 U.S. at

23  5.

24      Second, Joseph states that the car used in several of the bank robberies was burgundy rather

25  than red, and that it was not his vehicle, which is red in color.  The government admitted evidence

26  (including pictures) of defendant's red Camry, but defense counsel strenuously argued that the

27  evidence did not establish that it was defendant's car that was used in the robberies.  Tr. 1347, 1359,

28  1366-67, and 1370.  One witness did refer to the car as burgundy (a purplish red) rather than red,

United States District Court
For the Northern District of California

1   which was brought out on both direct and cross-examination.  Tr. 362-69, 1217-19.  Defense

2   counsel adequately addressed the issue of the car used in the robberies, and thus, this allegation of

3   ineffective counsel is also not factually supported.

4          Third, Joseph asserts that his trial counsel Fong did not obtain photos and dental records that

5   could have cast doubt on the eyewitness identifications.  However, Joseph does not explain what

6   photographs were available and how they would have raised additional skepticism about his

7   identification.  Joseph also argues that dental records would have shown he wore braces on the date

8   of the robbery, so that he could not have matched the description provided.  The Alliance branch

9   manager picked Joseph out of a photo lineup and testified extensively about this identification.  It is

10  difficult to see how dental records would be useful in countering testimony regarding a photo

11  lineup.  Fong could have made a tactical decision not to investigate these photos or records and to

12  spend resources elsewhere.  *See Yarborough*, 540 U.S. at 5.  Moreover, Fong did try to impeach the

13  branch manager at length regarding this identification.  Tr. 618-33.  Thus, this does not fall beneath

14  the standard of objectively reasonable counsel that the Sixth Amendment demands.

15         Fourth, Joseph asserts that counsel did not introduce additional evidence of the Enterprise

16  Rent-a-Car receipt that the United States introduced at trial to prove that Joseph rented a car for the

17  February 7, 1996 bank robbery.  The admitted receipt shows that Joseph rented a car from

18  Enterprise on February 6, 1996 and that this car was returned for a replacement vehicle on February

19  8, 1996.  Joseph believes that counsel should have argued that this receipt is inconsistent with the

20  government's assertion that Joseph procured a car on February 7, 1996 for the bank robbery on the

21  same day.  This, once again, appears to be a tactical decision by defense counsel, because counsel

22  could have chosen to avoid drawing attention to what could be considered corroborating evidence

23  by making the decision not to highlight this very slight inconsistency.

24         Finally, Joseph argues that counsel was ineffective for not trying to introduce evidence to

25  impeach government witnesses.  He claims that Fong should have introduced letters from the

26  Bureau of Prisons noting that Bates and Scott were briefly housed together before trial.  Once again,

27  this topic was thoroughly discussed at trial.  The United States on direct examination asked both

28  witnesses about the time they were housed together, and Fong cross-examined both witnesses about

the issue.  Tr. 800-01, 853-55, 985-87, 1046-49.  The decision not to introduce the letters was likely

a tactical decision by Fong because the letters would have been, at best, less persuasive than

eliciting the matter through direct attempts to impeach Scott and Bates, and at worst, impermissible

hearsay evidence.

### 3.  Allowing opposing counsel to lead a witness on direct examination

Joseph criticizes his counsel for agreeing to give the government permission to lead Scott

near the end of Scott's testimony.  However, this was done to protect Joseph.  During Scott's

testimony, defense counsel expressed a concern at sidebar that Scott was going to testify about

additional uncharged robberies (besides Provident) in which Joseph was supposedly involved.  Tr.

866-68.  Fong consented to have the United States ask Scott leading questions involving that topic

on direct to avoid testimony that would have been prejudicial to Joseph.  *Id.*  A reasonable

concession to protect his client is not ineffective assistance.

### 4.  Failure to impeach government witness Scott

Joseph further criticizes his trial counsel for failing to impeach government witness Scott.

Joseph does not provide specific grounds on which counsel should have attempted to impeach Scott.

Counsel cross-examined Scott at length about whether or not Joseph was involved in the robberies,

the fact that Scott and Bates were housed together and could potentially have 'cooked' a story

implicating Joseph, and the fact that Scott was testifying pursuant to a plea bargain with the

government.  Such is what is expected of a reasonably competent professional.  Without substantive

allegations, this court cannot grant this petition.

### 5.  Failure to object to an opposing witness' presence in the courtroom

Joseph complains that Fong "failed to object to government witness Scott's presence in the

courtroom prior to his testimony." Pet.'s Mot. 12.  The complaint refers to the fact that this court

heard testimony by Scott outside of the presence of the jury prior to Scott testifying.  On the eve of

trial, Scott stated that he was afraid to testify against Joseph and would not take the stand despite his

plea agreement which required him to testify.  Tr. 496-97.  On the morning of trial, the court heard

testimony from Scott outside the presence of the jury to help decide the issue of Scott's refusal to

testify.  After testifying before the court, Scott withdrew his motion to quash the subpoena and

United States District Court
For the Northern District of California

1    testified before the jury.  Tr. 742, 754-886.  Scott testified before the court outside the presence of

2    the jury upon this court's request.  Fong likely chose not to object for a variety of reasons, including,

3    but not limited to, hoping that Scott's testimony before the judge would prevent a key government

4    witness from prejudicing the defendant before the jury.  The court will not second guess this

5    calculated risk.

### 6.  Failure to sufficiently consult with Joseph prior to trial

7         Joseph asserts that defense counsel did not spend enough time with him before trial.  Pet.'s

8    Mot. 11.  The *Strickland* standard for constitutional ineffectiveness is not about quantity of time, but

9    about quality of reasonable representation.  Competence is not directly proportional to how much

10   time is spent with the client.  More importantly, a petitioner must support ineffective assistance of

11   counsel claims through specific errors or omissions, not solely general or surrounding

12   circumstances.  *See United States v. Cronic*, 466 U.S. 648 (1984).  A merely conclusory statement

13   that defense counsel did not spend enough time with Joseph is not enough to assert ineffective

14   assistance of counsel, especially when the transcripts of trial clearly show that defense counsel Fong

15   was both prepared and competent at trial.

### 7.  Failure to explain the maximum possible sentence to Joseph

17        Finally, Joseph claims that counsel prevented him from obtaining a favorable plea deal

18   through failure to explain the maximum possible sentence he faced.  Joseph was presented with a

19   penalty sheet filed with his indictment long before Fong was assigned to represent him; this sheet

20   clearly illustrated that Joseph faced a maximum sentence of 128 years in prison.  Response Ex. 7,

21   Dkt. No. 13-7.  Joseph's failure, if any, to know of the maximum possible sentence, is of no fault of

22   defense counsel Fong.  Furthermore, Joseph received a sentence of 32 years, the shortest sentence

23   the court could impose.  Joseph also presented no evidence that he turned down any plea offer or

24   that the government had any interest in making a plea offer that he would have accepted.

25        Each and every one of Joseph's allegations involving ineffective assistance of counsel is, at

26   best, "[m]erely conclusory statements . . . not enough to require a hearing."  *See Hearst*, 638 F.2d at

27   1194.  Worse, each and every allegation lacks factual merit and falls well below the standard set

28   forth in *Strickland*.  Thus, none of Joseph's allegations are sufficient to support his § 2255 motion.

ORDER DENYING § 2255 MOTION
C-08-04607-RMW
SW/JU

United States District Court
For the Northern District of California

**8. Joseph has failed to show prejudice**

The court additionally finds that Joseph has failed to show any prejudice resulting from any of his claims of ineffective assistance of counsel. Under *Strickland*, he must show that his claims are sufficient to undermine confidence in his conviction. *Strickland*, 466 U.S. at 694. There is overwhelming evidence of guilt in this case that is not at issue in this petition. The court is not satisfied that there is sufficient evidence that any of the challenged behavior would have changed the jury's verdict in this case. For this reason, the court finds that Joseph's claims of ineffective assistance of counsel are not only legally and factually meritless, but that even if accepted as true, they collectively would not entail enough prejudice to grant Joseph's § 2255 petition.

## IV. CERTIFICATE OF APPEALABILITY

The court grants a certificate of appealability on Joseph's claim that he is at least entitled to a hearing on his allegation that his due process rights were violated because his conviction was based on perjured testimony.

## V. ORDER

For the foregoing reasons, petition for habeas corpus is DENIED.

Dated: July 22, 2013

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

United States District Court
For the Northern District of California

ORDER DENYING § 2255 MOTION
C-08-04607-RMW
SW/JU

- 15 -